## FRANKLIN v. CITY OF NEW YORK.

## MANHATTAN RY. CO. et al. v. CITY OF NEW YORK et al.

### No. 229.

Circuit Court of Appeals, Second Circuit.

Aug. 16, 1944.

Charles Franklin, of New York City (C. Dickerman Williams, J. M. Richardson Lyeth, and Mark W. Maclay, all of New York City, of counsel), pro se and for Manhattan Railway Co., appellants.

Ignatius M. Wilkinson, Corp. Counsel, of New York City (Leo Brown, Louis M. Weintraub, and Benjamin Offner, all of New York City, of counsel), for cross-appellant.

Hodges, Reavis, Pantaleoni & Downey, of New York City (C. Frank Reavis, of New York City, of counsel), for Manhattan Modified Stock Committee, appellant.

Duer, Tayler, Wright & Woods, of New York City (John S. Chapman, Jr., of New York City, of counsel), for Committee for Guaranteed 7% Stock of Manhattan R. Co., appellee.

Before SWAN, CHASE, and CLARK, Circuit Judges.

SWAN, Circuit Judge.

These appeals challenge the amount of compensation allowed to Charles Franklin for legal services in the receivership proceedings of Interborough Rapid Transit Company and Manhattan Railway Company. By an order entered July 3, 1940 Judge Patterson allowed Mr. Franklin $20,000 upon a petition dated May 15, 1940 asking for an allowance, under Article Six paragraph (8) (d) of the Unification Plan, of $345,000 for services as general counsel and solicitor of Manhattan Railway Company. Manhattan and Mr. Franklin have appealed from this order on the ground of the inadequacy of the allowance. By a supplemental petition Mr. Franklin sought an allowance, under Article Six paragraph (6) of the Unification Plan, of the $325,000 which he had not obtained under his May 15th petition. Upon the supplemental petition Judge Hulbert made the order of December 31, 1942 allowing him $15,000 for services as general counsel, and charging the same against the cash reserve allocated to holders of Manhattan Modified Stock. Manhattan and Mr. Franklin assert that this allowance was inadequate; by cross appeal the City of New York contends that no allowance was permissible. A committee for holders of Manhattan Modified Stock have appealed on the ground that holders of Manhattan 7% Stock should bear part of the burden of any allowance made under Article Six paragraph (6).

The Interborough-Manhattan receivership has frequently been before this court in various aspects and need not be again described in detail. See American Brake Shoe & F. Co. v. Interborough R. T. Co., 2 Cir., 122 F.2d 454, certiorari denied sub nom. Manheim v. Merle-Smith, 315 U.S. 801, 62 S.Ct. 625, 86 L.Ed. 1201. The Interborough receivership was extended to Manhattan on September 6, 1932. Shortly thereafter on November 11, 1932 Manhattan's board of directors elected Charles Franklin to serve as its general counsel. By a subsequent vote on February 8, 1934 the board fixed his compensation at $15,000 per year, retroactive to the date of his appointment. The resolution further provided that this sum was not intended to cover special services, such as representing Manhattan in the courts and in conferences respecting unification, "for which reasonable compensation will be paid." The same salary as general counsel was fixed by the board for each succeeding year of the receivership. On January 30, 1933 Mr. Franklin became solicitor for Manhattan. In the receivership proceedings Manhattan's receiver was represented by independent counsel, as were also various committees representing holders of Manhattan's bonds and stock. For one of these, the Modified Stock Committee, Mr. Franklin served as sole counsel until 1938 and as co-counsel thereafter. In the various capacities above stated he devoted most of his time to Manhattan and receivership matters for substantially seven and a half years and until the Unification Plan was consummated on June 12, 1940. By the terms of this Plan the Interborough and Manhattan security holders were offered stated amounts for their securities, and the City took over the properties involved in the receivership and assumed specified liabilities of the companies and of the receivership.

Mr. Franklin's first petition for compensation, filed on July 23, 1934, requested the allowance of $15,000 per year for his services as general counsel of Manhattan. Judge Mack, who was then in charge of the receivership, made an order allowing $3,000 per year to cover the services necessary to preserve the corporate organization of Manhattan. Under this order Mr. Franklin has received $22,500. As Judge Mack's oral opinion shows he did not pass on the obligation of Manhattan itself, apart from the receivership, to pay a reasonable salary to its general counsel. Thereafter Mr. Franklin filed various applications for allowances, all of which were denied without prejudice to renewal at the termination of the receivership. In April 1940 Mr. Franklin and Mr. Reavis as co-counsel for the Modified Stock Committee sought an allowance of $400,000 for legal services. Upon that petition Judge Patterson allowed them $70,000 under Article Six paragraph (6) of the Unification Plan, of which Mr. Franklin received $35,000. On May 15, 1940, pursuant to an order requiring certain claims (including that of "the solicitor and general counsel of Manhattan Railway Company for his services and disbursements

in the receivership and related proceedings") to be filed by that date, Mr. Franklin petitioned for an allowance of $345,000 as the reasonable value of his services, and for $3,413.89 as disbursements. His petition had been approved by the Manhattan board of directors. It claimed a balance of $90,-000 for services as general counsel ($15,000 per year for 7½ years less the $22,500 previously received under Judge Mack's order) and an allowance of $255,000 for services as Manhattan's solicitor in the receivership and related proceedings. It set out the services at great length and asserted that the City was obligated to pay for them under Article Six paragraph (8) (d) of the Unification Plan. The order of July 3, 1940 decreed that "the petition of Charles Franklin, attorney for Manhattan Railway Company, be and is hereby allowed in the sum of $20,000 for services in the case of Ex parte Manhattan Railway Company and for services in the receivership cause, with disbursements of $3,413.89." The order also provided that the allowances granted should be "in full of all services to date." At the hearing on which the July 3rd order was settled, Mr. Franklin received oral permission from Judge Patterson to file a supplemental petition asserting under paragraph (6) of Article Six all claims presented under paragraph (8) (d) in his May 15th petition. Thereafter on August 29, 1940, Manhattan and Mr. Franklin filed a supplemental petition incorporating the May 15th petition and seeking an allowance under paragraph (6) of Article Six of the $325,000 not obtained under the petition of May 15th. Whether the Manhattan board of directors at a meeting on July 2, 1940 authorized the filing of the supplemental petition is a matter hotly disputed but we do not regard the issue as material. The petition came on before Judge Hulbert and was referred to a special master. After lengthy hearings the special master reported that Mr. Franklin was not entitled to an additional allowance. Judge Hulbert modified the report by allowing $15,000 for services as general counsel to be paid out of cash allocable to Manhattan Modified Stock.

Mr. Franklin argues that Manhattan contracted to pay him $15,000 per year for services as its general counsel of which he has received only $22,500 leaving a liquidated balance of $90,000 still due, and also contracted to pay him a reasonable sum (alleged to be $255,000) for services as solicitor in the receivership and related proceedings; and that payment of these contractual obligations was either assumed by the City under paragraph (8) (d) of Article Six of the Plan or chargeable against the reserves for Manhattan Stock under paragraph (6) of Article Six. It is urged that Judge Patterson erred in ruling that paragraph (8) (d) bound the City to pay only for services beneficial to the receivership estate and that in any event his fixing of the value of such services at only $20,000 instead of $345,000 was an abuse of discretion; and further, that if Judge Patterson was right in holding that paragraph (8) (d) covered only services to the receivership estate, then Judge Hulbert erred in allowing only $15,000 instead of the balance of $325,000 under paragraph (6).

It is clear that the Unification Plan did not bind the City to assume all the "existing agreements" of the two corporations in receivership. That term as defined in definition (12) excepts "contracts or agreements relating to the employment of counsel." In Article Six paragraph (5) it is expressly declared that the City will not assume or pay

"(d) Any legal, accounting, engineering or other expenses or compensation of * * * Manhattan Railway Company, other than any allowance which may be made by the District Court pursuant to the provisions of subdivision (d) of paragraph (8) of this Article."

The relevant portions of paragraph (8) read as follows:

"(8) Except as otherwise expressly provided in paragraph (5) of the Article, the City, on the date of consummation, will assume all debts and liabilities of and claims and demands against * * * the Manhattan Company * * * outstanding on or as of that date, to the extent that the same shall not have theretofore been paid and discharged out of the revenues, funds or assets in the hands of the receivers of * * * Manhattan Railway Company or out of * * * the Manhattan Retained Assets. Without limiting the generality of the foregoing, the City shall assume:

(d) * * * allowances, if any, which may be made by the District Court to the solicitor and general counsel of the Manhattan Railway Company for his services and disbursements in the receivership and related proceedings; * * *"

In our opinion these provisions plainly indicate that the City was not to assume Manhattan's contracts for legal expenses but agreed only to pay "allowances, if any, which may be made by the district court;" and that such allowances must be made in accordance with the principle which controls the allowance of counsel fees in receivership cases, namely, benefit to the receivership estate.

■ As an alternative Mr. Franklin argues that he should get from the Manhattan stockholders under paragraph (6) of Article Six of the Unification Plan the fees the company contracted to pay him. The language relied upon reads as follows:

"The legal, accounting, engineering and other expenses and compensation of the Manhattan Railway Company (except as otherwise provided in subdivision (d) of paragraph (8) of this Article with respect to the solicitor and general counsel of the Manhattan Railway Company), * * * all subject to the approval of the District Court, shall be paid out of the Corporate Stock allocable under Article Four of the Plan to the Guaranteed 7% Stock and the Modified Guaranteed 5% Stock of the Manhattan Railway Company in the proportions determined by the District Court."

This does not mean that Manhattan's contracts for legal fees are to be enforced against its stockholders. As this court held with respect to similar language in Article Six relating to the legal expenses of Contracting and Assenting Committees, the amount of the allowance must turn upon "what was done that was beneficial and what that was worth." Palmer v. Watson, 2 Cir., 122 F.2d 598, 600. If Manhattan had assets of its own, the case upon which counsel heavily relies, In re Hollis Lumber Co., 2 Cir., 55 F.2d 898, would be applicable, but here the funds sought to be charged belong to the stockholders as such; they do not take them by distribution of corporation assets. Hence if Mr. Franklin were entitled to be paid anything under paragraph (6) he would be limited to the amount of benefit his services not otherwise compensated had conferred upon Manhattan stockholders. But it seems to us clear that he can take nothing under paragraph (6). His claim as general counsel and solicitor was expressly excepted from paragraph (6) because special provision for allowances to him in these capacities was contained in paragraph (8) (d). The order of December 31, 1942 directing a payment to him under paragraph (6) was erroneous.

■ There remains for consideration the question whether Judge Patterson's allowance under paragraph (8) (d) was so low as to amount to an abuse of discretion. In appraising the value of an attorney's services in a receivership proceeding benefit to the estate and accomplishment rather than effort or time consumed supply the measuring yardstick. The district judge who is familiar with the proceedings is in a far better position than an appellate court to apply such a measure; hence ordinarily there is little chance of our intervening. See Palmer v. Watson, 2 Cir., 122 F.2d 598. The present case is most unusual, however, in that after Judge Patterson's decision the whole matter was presented before a special master who took a vast amount of evidence and made a lengthy and detailed report. This unusual circumstance makes in large part against modification of Judge Patterson's allowance, but in respect to one item it is favorable to a modification. The special master reported that much of Mr. Franklin's work duplicated that of other counsel, as it obviously did, and much of it was of no benefit to the receivership; and he concluded that the amounts Mr. Franklin had already received for his services as solicitor were the reasonable value thereof. Judge Hulbert did not differ from this conclusion. Under these circumstances we should not think of undertaking a reappraisal of Mr. Franklin's services as solicitor. But the special master found that the reasonable value of his services as general counsel was $5,000 per year during the receivership, of which he had received only $3,000 yearly pursuant to Judge Mack's order. It was on the basis of this finding that Judge Hulbert made the $15,000 allowance. Under these unusual circumstances we feel justified in modifying the order of July 3, 1940 by increasing the allowance from $20,000 to $35,000. As so modified, that order is affirmed; the order of December 31, 1942 is reversed. No appellate costs are awarded.